IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:18-CR-117-D

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| JAMAR KE-SHAWN PARKER, ) | |
| ) | |
| Defendant. ) | |

On January 11, 2021, Jamar Ke-Shawn Parker ("Parker" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 50]. On February 16, 2021, Parker, through counsel, moved again for compassionate release [D.E. 53]. On March 2, 2021, the government responded in opposition and filed exhibits in support [D.E. 54]. As explained below, the court denies Parker's motion.

I.

On March 8, 2019, without a plea agreement, Parker pleaded guilty to two counts of distribution and possession with intent to distribute a quantity of heroin. See [D.E. 1, 25]. On July 25, 2019, the court held a sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 36–38, 44]. The court calculated Parker's total offense level to be 29, his criminal history category to be VI, and his advisory guideline range to be 151 to 188 months' imprisonment. See [D.E. 38] 1; [D.E. 44] 5. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Parker to 168 months' concurrent imprisonment on each count. See [D.E. 37] 2; [D.E. 44] 5–22. Parker appealed [D.E. 39]. On May

27, 2020, the United States Court of Appeals for the Fourth Circuit affirmed the court's sentence. See United States v. Parker, 806 F. App'x 231, 232 (4th Cir. 2020) (per curiam) (unpublished); [D.E. 45, 46].

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75%

2

of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

    (I) suffering from a serious physical or medical condition,

    (II) suffering from a serious functional or cognitive impairment, or

    (III) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

    (C) Family Circumstances.—

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, No. 20-7350, 2021 WL 1823289, at *3 (4th Cir. May 7, 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir. 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 2021 WL

---

> when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

4

1823289, at *3; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

On December 22, 2020, the Warden denied Parker's request for compassionate release. See [D.E. 50-1]; [D.E. 53] 2; [D.E. 54-2]. The government concedes that Parker has exhausted his administrative remedies. See [D.E. 54] 2; United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[2] Accordingly, the court addresses Parker's claim on the merits.

Parker seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Parker cites the COVID-19 pandemic, his bout with and recovery from COVID-19, and his kidney problems, treatment for and recovery from an eye infection, headaches, dizziness, vision problems, and chest pains. See [D.E. 50] 7; [D.E. 53] 5–6; cf. [D.E. 54-1]. Parker also cites the conditions at FCI Williamsburg, his rehabilitation efforts, his release plan, and his family circumstances. See [D.E. 50]; [D.E. 53] 5–9.

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Although Parker states that he suffers from kidney problems, headaches, dizziness, vision problems, and chest pains, he has not

---

[2] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

5

demonstrated that he is not going to recover from these conditions or that they cannot be treated while Parker serves his sentence. The same holds true were Parker to contract COVID-19 again. Accordingly, reducing Parker's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the family circumstances policy statement, the policy statement requires "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children." U.S.S.G. § 1B1.13 cmt. n.1(C)(i). Although Parker does allege significant family upheaval and the incarceration of his children's mother, he has not provided any evidence of the paternity of the children or that Parker is the sole available caregiver. See [D.E. 50] 1–4; [D.E. 53] 6–9. Accordingly, reducing Parker's sentence is not consistent with application note 1(C). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Parker's medical conditions, Parker's rehabilitation efforts, Parker's family circumstances, and his release plan are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Parker's sentence. See High, 2021 WL 1823289, at *4–7; Kibble, 992 F.3d at 330–31; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Parker is 33 years old and engaged in serious criminal conduct in 2017 and 2018. See PSR ¶¶ 6–8. Parker sold over 91 dosage units of heroin to a confidential informant in almost six months' time, for a total drug weight of 1.92 grams. See id. Parker is a relentless drug dealer and career

6

offender with convictions for possession of marijuana (four counts), possession of stolen goods or property, assault on a female (two counts), selling or delivering heroin (two counts), selling or delivering a Schedule I controlled substance, trafficking in opium and heroin, selling or delivering cocaine (two counts), delegated authority (two counts), post-release supervision violation (two counts), fleeing or eluding arrest with a motor vehicle, and reckless driving wanton disregard. See id. ¶¶ 13–26, 31. Moreover, Parker has performed poorly on supervision. See id. Nonetheless, Parker has taken some positive steps while incarcerated. See [D.E. 50] 3; [D.E. 53] 9.

The court has considered Parker's exposure to and recovery from COVID-19, his medical conditions, his rehabilitation efforts, his family circumstances, and his release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 2021 WL 1823289, at *4–7; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Having considered the entire record, the steps that the BOP has taken to address COVID-19 and to treat Parker, the section 3553(a) factors, Parker's arguments, the government's persuasive response, and the need to punish Parker for his serious criminal behavior, to incapacitate Parker, to promote respect for the law, to deter others, and to protect society, the court declines to grant Parker's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); High, 2021 WL 1823289, at *4–7; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Parker's request for home confinement, Parker seeks relief under the CARES Act. See [D.E. 50, 53]. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the

7

Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). Thus, the court dismisses Parker's request for home confinement.

II.

In sum, the court DENIES Parker's motion for compassionate release [D.E. 50, 53], and DISMISSES Parker's request for home confinement.

SO ORDERED. This 20 day of May 2021.

JAMES C. DEVER III
United States District Judge